IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| COREY ANGELO BROWN | : | CIVIL ACTION |
| | : | NO. 10-2050 |
| v. | : | |
| | : | |
| GAIL LEWIS, PHILADELPHIA PAROLE | : | |
| OFFICE AND COLEMAN COMMUNITY | : | |
| CENTER | : | |

O'NEILL, J.                                                                                April 27, 2011


**MEMORANDUM**

On the afternoon of March 8, 2010, plaintiff Corey Angelo Brown, appearing pro se, was

a front seat passenger in a vehicle operated by defendant parole agent Gail Lewis.[1]  Lewis was

transporting Brown to Community Education Center's Coleman Hall[2], where Brown was then

subject to confinement.  En route, Brown and Lewis were involved in a vehicle accident with a

water department truck.  Brown alleges he was injured during the accident and was thereafter

provided with inadequate medical treatment in violation of his rights under the Civil Rights Act,

42 U.S.C. § 1983.  He contends that he was transferred to Graterford Prison in retaliation for his

refusal to remain silent about the accident.  He also claims that he was subjected to false

imprisonment and that he suffered "emotion[al] damages."

Following the accident, Lewis exchanged information with the other driver.  When

_____

[1]      I dismissed Brown's claims against co-defendants Community Education Centers,
Inc. and the Pennsylvania Board of Probation and Parole on September 27, 2010.

[2]      Coleman Hall is a residential facility operated by Community Education Centers
pursuant to contracts with the Pennsylvania Department of Corrections and the County of Bucks.
See Mot. of CEC at 1.

Brown attempted to speak with the other driver, Lewis directed Brown to stay in the car.  Brown

reported to Lewis that his knees and lower back had been injured in the accident.  He asked if he

could be taken to a hospital.  He alleges that Lewis told him "I won't take you to the hospital,"

and instead threatened to take him to Graterford Prison.  Brown told her he did not want to go

back to prison and that he would go to Coleman Hall.

Brown was then taken to Coleman Hall where he asked for a doctor.  He asserts that the

Coleman Hall staff and assistant director informed him that they had no medical doctor available

and could not help him.  Brown alleges that he then showed the staff information Lewis had

given him about the driver of the other vehicle.

Lewis and her partner returned to Coleman Hall after the Coleman Hall staff called Lewis

to tell her that Brown was "giving them trouble."  While Brown was eating, Lewis and her

partner handcuffed and shackled him.  Brown asked why he was being arrested and asserts that

Lewis responded by telling him to "shut up" and then calling "for a temporary warrant for 48

hours."[3]  He was then transported to Graterford.  Brown alleges that while in transit Lewis told

him he "should have been quiet about the accident; now it[']s too late, [you are] going to prison."

He claims that Lewis called a friend on her cell phone and told the friend about Brown's situation

"as if [he] had done something wrong."

Brown contends that upon his arrival at Graterford, he was given Naproxen for his pain

and that the information he had about the other driver was removed from his personal property.

---

[3]     In his brief in opposition to the motion to dismiss filed by Community Education
Centers and the Pennsylvania Board of Probation and Parole, Brown alleges that the charges filed
against him by Lewis on the day of the accident were subsequently dropped.  Pl.'s Opp. Br. at 3
("[O]n 6-22-10 I met with parole agent [H]ampton, hi[s] comments were the charges were
drop[p]ed that Agent Gail Lewis filed and should never have been filed against me.").

In his opposition to Lewis' motion to dismiss, Brown asserts that his "condition has worsen [sic] and now requires serious surgery." Pl.'s Opp. Br. at 3.

In his complaint, Brown alleges that he complained about the events of March 8, 2010 to the Pennsylvania Board of Probation and Parole through Garth Walls. Compl. at 4-5. He asserts that Mr. Walls forwarded an affidavit pertaining to the events to a higher office. Id. In his opposition to Lewis' Motion, Brown asserts that while in prison he filed proper grievance forms with respect to his complaints and that he sent complaints to Superintendent David DiGuglielmo on March 18, 2010 and again on March 22, 2010. Id. at 6.

Presently before me is a motion to dismiss filed by Lewis and Brown's response thereto. For the following reasons, I will deny Lewis' motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a Court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch.Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The

Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss:  'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:  "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950 .  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) .  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

Additionally, pleadings that are pro se must be held to "less stringent standards than formal pleadings drafted by lawyers." Dickerson v. Brooks, No, 06-289, 2007 WL 4689001, at *2 (W.D. Pa. Oct. 31, 2007), citing Haines v. Kerner, 404 U.S. 519, 520-521 (1972). See also United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (noting that a petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of

4

tolerance"). Pro se complaints, especially from civil rights plaintiffs, should be read liberally, as

prisoners in particular are often at an informational disadvantage that may prevent them from

pleading the full factual predicate for their claims. Alston v. Parker, 363 F.3d 229, 233-34 & n.6

(3d Cir. 2004). Because Brown is a pro se litigant, I will consider his allegations of fact and

make inferences where it is necessary and appropriate.

## DISCUSSION

Lewis makes four arguments as to why she believes all or a portion of Brown's claims

against her should be dismissed: (1) Brown failed to exhaust his administrative remedies; (2)

Brown fails to state an Eighth Amendment claim for inadequate medical treatment because he

has not alleged Lewis acted with deliberate indifference; (3) Brown's allegations that Lewis

made threatening statements to him fail to state a claim under the Eighth Amendment; and

(4) sovereign immunity bars his state law claims against her. I will address each argument in

turn.

### A.      Failure to Exhaust

Lewis argues that Brown's claims against her must be dismissed for failure to exhaust his

administrative remedies. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that

"no action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner

confined in any jail, prisons, or other correctional facility until such administrative remedies as

are available are exhausted." Lewis argues that "it is unclear from the Complaint whether

plaintiff filed a grievance at Graterford or whether he merely submitted an affidavit of the events

to a representative of the BPP." Def.'s Br. at 10. She also contends that Brown concedes that he

did not exhaust the grievance process. I disagree.

Brown's complaint makes a plausible claim that he exhausted his administrative remedies. Although his complaint does not allege steps taken to appeal any grievances, his complaint likewise includes no allegation that he ever received a reply to his complaints such that he could have made an appeal. See Carter v. Morrison, No. 06-3000, 2007 WL 4233500 (E.D. Pa. Nov. 28, 2007) ("a plaintiff who files grievances and receives no response has exhausted his or her remedies"). Failure to exhaust is an affirmative defense that must be proven by Lewis, not Brown. See Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Lewis "did not provide the court with information on the procedures [Brown] did or did not follow in the grievance process" and has not shown how Brown failed to meet the requirements of the grievance process. Cerome v. Moshannon Valley Corr. Ctr./Cornell Cos., Inc., No. 09-2070, 2010 WL 4948940, at *4 (3d Cir. Dec. 7, 2010) (finding that the "District Court erred when it placed the burden on [plaintiff] to prove exhaustion of administrative remedies"). Lewis has not met her burden of proving Brown's failure to exhaust for purposes of her motion to dismiss.

## B.     Section 1983 Claims

Section 1983 provides a cause of action for violations by state actors of rights guaranteed by the United States Constitution or federal statutory law.[4] To state a valid claim under section 1983, "[a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting

---

[4]     Section 1983 provides: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

under color of state law."[5]  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995),

quoting Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

### 1. Inadequate Medical Treatment

Brown alleges that Lewis failed to provide him with timely access to medical care

following the motor vehicle collision.  The Eighth Amendment is violated with respect to the

provision of medical care where a defendant acts with "deliberate indifference" to a plaintiff's

"serious medical needs."[6]  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A prison official acts

with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate

health or safety."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003),

quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Lewis admits that she "was aware that plaintiff claimed he injured his knees and back"

and assumes for the purpose of her motion to dismiss that Brown's injuries were serious.  Lewis

Mot. to Dismiss at 6.  Despite Brown's complaint, following the accident Lewis transported him

not to a hospital, but to Coleman Hall.  At Coleman Hall, Brown asked for a doctor but was told

that there was no doctor available to see him there.  Lewis argues that Brown ultimately received

medical care and his allegations amount only to an inactionable claim that he was dissatisfied

with his ultimate medical treatment.  See Lanzaro, 834 F.2d at 346 (holding that mere

disagreement as to the propriety of the prescribed medical treatment will not support a claim of

---

[5]     Lewis does not dispute that she is a state actor.

[6]     A medical need is serious "if it is one that has been diagnosed by a physician as
requiring treatment or one that is so obvious that a lay person would easily recognize the
necessity for a doctor's attention."  See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d
326, 347 (3d Cir. 1987) (internal quotations omitted).

an Eighth Amendment violation). I disagree.

Only after Lewis returned to Coleman Hall and transported Brown to Graterford did he see a doctor. Given Lewis' alleged concern that Brown keep "quiet about the accident," compl. at 10, Brown makes a plausible claim that Lewis declined to transport him to a hospital and otherwise delayed in providing him with access to medical care out of a self-interested concern that her involvement in the automobile accident remain undisclosed. At the motion to dismiss stage, Brown's allegations state a plausible claim for relief against Lewis. "[I]f prison authorities deny reasonable requests for medical treatment, and thereby subject the inmate to undue suffering or a threat of tangible residual injury, or if they delay treatment for non-medical reasons, deliberate indifference may be present." Petrichko v. Kurtz, 52 F. Supp. 2d 503 (E.D. Pa. 1999). Accepting Brown's claims as true, he has "set out 'sufficient factual matter' to show that [his Eighth Amendment claim for inadequate medical treatment] is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949.

### C.     Threatening Statements

Lewis argues that I must dismiss Brown's claim that she threatened to take him to prison. Lewis contends that "mere allegations of verbal abuse, threats or defamations by a correctional officer to a prisoner are not cognizable in a Section 1983 action." Fischl v. Armitage, 128 F. 3d 50, 55 (2d Cir. 1997). She is correct that verbal harassment and threats alone are insufficient to state a constitutional violation under section 1983. However, in construing Brown's complaint liberally, his allegation that Lewis threatened to take him to prison appears to be more than an allegation of verbal harassment. His complaint appears to raise a cognizable claim that Lewis not only threatened to remove Brown from Coleman Hall, but that in fact she had him transferred

to Graterford in retaliation for his refusal to keep quiet about her involvement in the automobile accident. See Funk v. Stanish, No. 10-0664, 2011 WL 1304737, at *7 (M.D .Pa. Mar. 31, 2011) (denying motion to dismiss where plaintiff claimed that defendant "not only threatened to transfer him for filing grievances and complaints, but also that [defendant] retaliated against him for filing the grievances and complaints by actually having him transferred to a different prison").[7] Accordingly, I will allow Brown's claim to proceed.

### D. Sovereign Immunity

Employees of the Commonwealth of Pennsylvania, including employees of the Board of Probation and Parole, are immune from damages claims for violations of state law, including claims for intentional misconduct, while acting within the scope of their employment unless the General Assembly has specifically waived immunity. 1 Pa. Cons. Stat. § 2310; see also Shoop v. Dauphin Cnty., 766 F. Supp. 1327, 1333-34 (M.D. Pa. 1991); aff'd, 945 F.2d 396 (3d Cir. 1991), cert. denied 502 U.S. 1097 (1997) (finding State Troopers had sovereign immunity from state law claims of false imprisonment, assault and battery, malicious abuse of process and intentional infliction of emotional distress). To the extent that Brown's complaint asserts state law claims for false imprisonment and/or negligent infliction of emotional distress, see Compl. at 5-6 ("I would like the courts to investigate all events that le[d] to my false imprisonment due to cover up of car accident"; seeking "emotion [sic] damages neglect by law officials [sic]"), none of the

---

[7]     To prove a claim of retaliation, Brown must establish (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by Lewis which would have deterred a person of ordinary firmness from exercising his constitutional rights; and (3) a causal connection between his constitutionally protected activity and Lewis' decision to take an adverse action against him. See Frazier v. Daniels, No. 09-3612, 2010 WL 2040763, at *10 (E.D. Pa. May 20, 2010).

prescribed exceptions to sovereign immunity apply. 42 Pa. Cons. Stat. § 8522(b) (exceptions to sovereign immunity for cases involving: 1) vehicle liability; 2) medical-professional liability; 3) care, custody or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines). Brown's state law claims against Lewis are therefore barred unless, construing the facts alleged in the light most favorable to Brown, Lewis was acting outside the scope of her employment during his alleged false imprisonment.

In her motion to dismiss, Lewis asserts only that "[a]t all times, [she] was acting within the course and scope of her duties." Def.'s Mot. at 8. However, Brown makes at least a plausible argument that Lewis acted outside of the scope of her authority. "Under Pennsylvania law, an employee acts within the 'scope of his employment' when she engages in conduct of the kind the employee is employed to perform, when the conduct occurs 'substantially within the authorized time and space limits,' and when the conduct is 'actuated, at least in part, by a purpose to serve' the employer." Johnson v. Knorr, No. 01-3418, 2005 WL 3021080, at *8 n.5 (E.D. Pa. Oct. 31, 2005) (rev'd on other grounds), citing Restatement (Second) of Agency § 228(1) (1958); Aliota v. Graham, 984 F.2d 1350, 1359 (3d Cir. 1993). Under a reasonable reading of the facts alleged by Brown, Lewis' actions may not have been motivated by her obligations as a parole agent, but instead may have been motivated by her desire to avoid any negative outcome from her involvement in the automobile accident at this stage of the proceedings. Accordingly, I cannot determine whether sovereign immunity would protect Lewis from liability. See Savage v. Judge, No. 05-2551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2006)

10

(denying in part a motion to dismiss on sovereign immunity grounds where the record failed to establish that defendant's alleged retaliatory motive "was in part a desire to serve his employer, the Department of Corrections"); Robus v. Pa. Dep't of Corr., No. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. July 20, 2006) ("Because it can be reasonably inferred from the amended complaint that personal concerns alone motivated [defendant's] actions, the amended complaint adequately alleges that [defendant] acted outside the scope of his duty."). Accordingly, I will deny Lewis' motion to dismiss Brown's state law claims against her.

An appropriate Order follows.